FILED
CLERK, U.S. DISTRICT COURT

**12/9/2020**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DD _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2020 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>           v.<br><br>C'EST TOI JEANS, INC.,<br>SI OH RHEW, and<br>LANCE RHEW,<br><br>           Defendants. | CR 20-222(A)-ODW<br><br>F I R S T<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy; 18<br>U.S.C. § 541: Entry of Goods<br>Falsely Classified; 18 U.S.C.<br>§ 542: Entry of Goods by Means of<br>False Statements; 18 U.S.C. § 545:<br>Passing False and Fraudulent Papers<br>Through Customhouse; 18 U.S.C.<br>§ 1956(a)(2)(A): International<br>Promotional Money Laundering; 18<br>U.S.C. § 1956(a)(1)(B)(i):<br>Concealment Money Laundering; 31<br>U.S.C. §§ 5331(a)(1), 5322(b),<br>5324(b)(1), (d)(2): Failure to File<br>Report of Currency Transaction in a<br>Non-Financial Trade or Business; 26<br>U.S.C. § 7206(2): Aiding,<br>Assisting, and Procuring the Filing<br>of a False Tax Return; 18 U.S.C.<br>§§ 545, 981, and 982, 28 U.S.C.<br>§ 2461, 31 U.S.C. § 5317: Criminal<br>Forfeiture] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this First Superseding Indictment:

**Structure of C'est Toi Jeans, GLLR, JBLU**

1. Defendant C'EST TOI JEANS, INC. ("C'EST TOI JEANS") and GLLR, Inc. ("GLLR") were wholesale denim apparel companies in the garment district in Los Angeles that imported textiles from places such as China and sold them wholesale to retailers in places such as Mexico.

2. Defendant C'EST TOI JEANS was incorporated in 1994 and was owned by two individuals, defendant SI OH RHEW, who owned a seventy-five percent share, and his spouse, who owned a twenty-five percent share.  Both defendants SI OH RHEW and LANCE RHEW were corporate officers of defendant C'EST TOI JEANS.

3. GLLR was incorporated in 2011 and was fully owned by defendant LANCE RHEW.

4. Defendant C'EST TOI JEANS did business under different names, including GLLR and JBLU, Inc. ("JBLU"), which were companies that were incorporated separately.

5. Defendant C'EST TOI JEANS, JBLU, and GLLR recorded daily receipts of payment on a ledger titled "My Own CR Report."

6. Defendant C'EST TOI JEANS, JBLU, and GLLR maintained multiple business locations in Los Angeles, including at 1015 Wall Street, #103/#105 (the "Wall Street Store") and 1016 Towne Avenue, #114/#115 (the "Towne Avenue Store").

**Tax Structure of Defendant C'EST TOI JEANS, JBLU, and GLLR**

7.   The Internal Revenue Service of the United States Treasury Department ("IRS"), was an agency responsible for administering and enforcing the tax laws of the United States and collecting the taxes owed to the Treasury of the United States by its citizens.

8.   Defendant C'EST TOI JEANS, JBLU, and GLLR were subchapter S corporations.  As such, their gross sales and ordinary business incomes were reported on Form 1120S, U.S. Income Tax Return for an S Corporation, which were filed with the IRS.  The ordinary business incomes were also reported proportionally on IRS Schedule K-1s to the owners, based on their ownership share.  The income from defendant C'EST TOI JEANS, JBLU, and GLLR "flowed through" the corporation to the owners without being taxed at the corporate level.  Instead, the ordinary business income for the businesses were reported as such by the owners of the companies, based on their shares, on their individual tax returns filed on Form 1040, U.S. Individual Income Tax Return, Schedule E.

9.   The tax returns for JBLU, GLLR, and defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW were prepared by Accountant A.

10.   Defendant SI OH RHEW filed personal tax returns, Form 1040, jointly with his spouse.

**Importation Process of Foreign Merchandise**

11.   The United States Department of Homeland Security, Customs and Border Protection ("CBP") was an agency responsible for administering and enforcing the customs laws of the United States and collecting the duties, taxes, and fees owed to the United States by

those who enter, introduce, or import merchandise into the commerce of the United States.

12.   No more than a week before the expected arrival of the merchandise at a port in the United States, or no later than 10 days after arrival, the importer of record or consignee, or customs broker filing on behalf of either party, was required to file entry documents for the merchandise, which required specific information relating to the imported goods, such as an accurate description of the merchandise, the purchase price of the merchandise, the terms of sale, and all costs and services determined by law to be dutiable. For many types of entries, the entry documents could be filed electronically and included documents such as CBP Form 7501 ("Entry Summary"), which contained the final invoice purchase price.  CBP relied on entry documents, including the stated value of the import, to assess the proper duties, taxes, and fees for the imported merchandise.

**Currency Reporting Requirements**

13.   Under federal law, whenever a nonfinancial trade or business, such as defendant C'EST TOI JEANS, received more than $10,000 in currency in one transaction or two or more related transactions that occur within one year, the business was required to file a notice with the Secretary of the Treasury known as an IRS Form 8300 ("Form 8300") no later than 15 days after the transaction.

**The "Black Market Peso Exchange"**

14.   Financial institutions typically charged fees for wire-transferring funds to or from Mexico, and to or from the United States.  Additional fees often were charged for exchanging funds from

Mexican pesos to United States dollars and from United States dollars to Mexican pesos.  In order to avoid these costs, some businesses chose to circumvent the legitimate financial system and employ a currency broker or "peso broker."

15.  A peso broker was an individual in Mexico who charged a reduced fee for converting United States dollars into pesos in Mexico through the use of an informal and illegitimate money transfer system.  To accomplish this, the peso broker worked with an individual, such as a drug trafficker, who had United States currency (dollars) in the United States that he needed to bring to Mexico and convert to pesos but for which he could not use the conventional financial system, typically because the funds were the proceeds of illegal activity.  The peso broker worked with, or on behalf of, business owners in Mexico who bought merchandise from vendors in the United States and needed dollars in the United States to pay for that merchandise.  The peso broker arranged, via a "money consolidator," for the drug trafficker's dollars in the United States to be delivered to the United States-based vendors, where they were needed to pay for merchandise purchased by the Mexico-based customers.  In exchange, the peso broker paid the drug trafficker in Mexico in pesos obtained from the Mexico-based businesses that purchased the merchandise.

16.  On September 10, 2014, a team of federal agencies, including Homeland Security Investigations ("HSI") and the IRS, executed search warrants at the business locations for defendant C'EST TOI JEANS, JBLU and GLLR, and the residences of defendants SI

OH RHEW and LANCE RHEW (the "2014 Federal Search of C'est Toi Jeans").

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

The Grand Jury re-alleges Introductory Allegations 1 through 4, 11, and 12 of this First Superseding Indictment here.

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, but no later than January 29, 2009, and continuing until on or about August 20, 2020, in Los Angeles County, within the Central District of California, and elsewhere, defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW conspired with others known and unknown to the Grand Jury to:

1.   Knowingly and willfully enter goods falsely classified as to value and by payment of less than the amount of duty legally due, in violation of Title 18, United States Code, Section 541;

2.   Enter goods into the United States by means of false and fraudulent invoice, declaration, affidavit, letter, and paper, and by means of any false statement, written or verbal, and by means of any false or fraudulent practice or appliance, and any false statement as to any material matter thereto without reasonable cause to believe the truth of such statement, in violation of Title 18, United States Code, Section 542;

3.   Knowingly, willfully, and with the intent to defraud the United States, pass false, forged, and fraudulent invoice or other document or paper through a United States customhouse, in violation of Title 18, United States Code, Section 545;

4.   Defraud the United States and agencies thereof, including the Department of Homeland Security, by impeding, impairing,

obstructing, and defeating the lawful governmental functions of a government agency, namely, CBP, by deceitful and dishonest means; and

5.   Knowingly and intentionally transport, transmit, and transfer, and attempt to transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, namely, Title 18, United States Code, Sections 541, 542, and 545, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

B.   <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED</u>

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.   Defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW would order garments from manufacturers in China and elsewhere, including from Manufacturers A, B, and C for defendant C'EST TOI JEANS.

2.   Until on or about September 10, 2014, defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW would prepare and caused to be prepared: (a) a complete invoice that reflected the true negotiated prices for the garments ordered for the benefit of C'EST TOI JEANS (the "negotiated invoice"); and (b) a false invoice that reflected lower values for garments that was used to calculate import valuations for CBP to assess import duties (the "false invoice").

3.   Defendants SI OH RHEW and LANCE RHEW, through defendant C'EST TOI JEANS, would cause false Entry Summaries, including false Forms 7501, that contained understated import values to be submitted

to CBP for purposes of assessing import duties, including: (a) by directing its customs brokers to use the false invoice for purposes of completing CBP Form 7501 and other documentation used to calculate import duties; and (b) by receiving garments which were imported under the name of a different importer of record.

4. Defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW, together with co-conspirators known and unknown to the Grand Jury, with the intent to promote the entrance of undervalued merchandise into the United States by means of false statements, would cause approximately 515 individual wire transfers totaling approximately $137,156,726.58 to be sent from bank accounts in Los Angeles, California to bank accounts in China, Hong Kong, and other locations outside of the United States for garments that were undervalued to CBP.

5. In total, defendants SI OH RHEW and LANCE RHEW, through defendant C'EST TOI JEANS, together with co-conspirators known and unknown to the Grand Jury, knowingly, willfully, and with intent to defraud the United States, would cause to be submitted false Entry Summaries that resulted in an undervaluation of imported merchandise by approximately $62,303,428.13, which caused approximately $10,269,068.27 in unpaid tariffs and duties owed to CBP.

C. <u>OVERT ACTS</u>

In furtherance of the conspiracy, and to accomplish its objects, on or about the following dates, defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of

California, and elsewhere, including, but not limited to, the following:

**Trade Fraud**

1.   On November 28, 2011, defendant C'EST TOI JEANS created an internal guidance document entitled "CEST TOI OFFICE.docx," which instructed its employees to modify invoices from manufacturers that were submitted to defendant C'EST TOI JEANS' customs brokers by replacing the true negotiated unit prices with false lower prices for each type of garment.

2-19.   On or about the following dates, defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW caused the following shipments of garments to be imported into the United States, which were understated in value, were accompanied by a correspondingly false CBP Form 7501, and resulted in duty not paid:

| NO. | ENTRY DATE | ENTRY NO. | FALSE VALUE DECLARED | AMOUNT UNDERVALUED | RESULTING DUTY NOT PAID |
| --- | --- | --- | --- | --- | --- |
| 2 | 10/24/2009 | W9201589384 | $118,308 | $28,939.50 | $4,803.96 |
| 3 | 04/14/2010 | W9201626434 | $145,611 | $54,611.70 | $9,065.54 |
| 4 | 11/09/2011 | 99V00107554 | $124,568 | $74,200.20 | $12,317.23 |
| 5 | 06/05/2012 | 99V00114907 | $116,408 | $91,448.10 | $15,180.39 |
| 6 | 07/09/2012 | 99V00116605 | $109,768 | $62,011.55 | $10,293.92 |
| 7 | 07/09/2012 | 99V00116613 | $121,616 | $93,097.60 | $15,454.20 |
| 8 | 07/09/2012 | 99V00116837 | $116,488 | $43,074.50 | $7,150.37 |
| 9 | 09/04/2012 | 99V00119252 | $140,564 | $101,110.80 | $16,784.39 |
| 10 | 09/24/2012 | 99V00120052 | $128,448 | $52,100.65 | $8,648.71 |
| 11 | 10/02/2012 | 99V00120300 | $122,344 | $76,976.20 | $12,778.05 |
| 12 | 11/01/2012 | 99V00121332 | $116,732 | $74,857.65 | $12,426.37 |
| 13 | 11/06/2012 | 99V00121829 | $115,796 | $78,344.90 | $13,005.25 |
| 14 | 11/08/2012 | 99V00122033 | $119,640 | $60,329.35 | $10,014.67 |
| 15 | 01/28/2013 | 99V00124823 | $136,017 | $72,923.90 | $12,105.37 |
| 16 | 01/29/2013 | 99V00125069 | $201,353 | $123,524.00 | $18,504.96 |
| 17 | 04/28/2014 | 99V00139300 | $98,352 | $54,063.65 | $8,137.46 |
| 18 | 06/06/2014 | 99V00140381 | $122,332 | $122,711.95 | $20,370.18 |
| 19 | 06/12/2014 | 99V00140472 | $115,311 | $101,881.50 | $15,671.67 |

**Money Laundering**

20-35.  On or about the following dates, defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW caused the amounts set forth below, based on true negotiated invoices, to be wire transferred from an account at a financial institution in Los Angeles, California, to an account at a financial institution in Mainland China, Hong Kong, or elsewhere, to promote fraudulent importation of garments:

| NO. | DATE | WIRE TRANSFER AMOUNT | OUTGOING BANK, LOCATION, ACCOUNT | RECIPIENT BANK, LOCATION | MANUFACTURER PAID |
|---|---|---|---|---|---|
| 20 | 10/15/2009 | $147,247.50 | Center Bank 3435 Wilshire Blvd, STE 700, Los Angeles, CA (JBLU Inc. Acct# 001387529) | Hong Kong & Shanghai Banking Corp., Hong Kong | Manufacturer A |
| 21 | 04/21/2010 | $200,222.70 | Center Bank 3435 Wilshire Blvd, STE 700, Los Angeles, CA (JBLU Inc. Acct# 001387529) | China Merchants Bank, Hong Kong | Manufacturer B |
| 22 | 12/15/2011 | $854,174.40 | Center Bank 3435 Wilshire Blvd, STE 700, Los Angeles, CA (Cest Toi Acct# 001390368) | China Merchants Bank, Hong Kong | Manufacturer B |

| NO. | DATE | WIRE TRANSFER AMOUNT | OUTGOING BANK, LOCATION, ACCOUNT | RECIPIENT BANK, LOCATION | MANUFACTURER PAID |
|---|---|---|---|---|---|
| 23 | 06/29/2012 | $207,856.10 | Center Bank 3435 Wilshire Blvd, STE 700, Los Angeles, CA (Cest Toi Acct# 001390368) | Hong Kong & Shanghai Banking Corp., Hong Kong | Manufacturer A |
| 24 | 08/30/2012 | $171,779.55 | Center Bank 3435 Wilshire Blvd, STE 700, Los Angeles, CA (Cest Toi Acct# 001390368) | Hong Kong & Shanghai Banking Corp., Hong Kong | Manufacturer A |
| 25 | 08/30/2012 | $417,519.35 | Center Bank 3435 Wilshire Blvd, STE 700, Los Angeles, CA (Cest Toi Acct# 001390368) | China Merchants Bank, Hong Kong | Manufacturer B |
| 26 | 08/13/2012 | $350,000.00 | Center Bank 3435 Wilshire Blvd, STE 700, Los Angeles, CA (Cest Toi Acct# 001390368) | China Citic Bank, Suzhou, China | Manufacturer C |

| NO. | DATE | WIRE TRANSFER AMOUNT | OUTGOING BANK, LOCATION, ACCOUNT | RECIPIENT BANK, LOCATION | MANUFACTURER PAID |
|---|---|---|---|---|---|
| 27 | 09/27/2012 | $241,674.80 | Center Bank 3435 Wilshire Blvd, STE 700, Los Angeles, CA (Cest Toi Acct# 001390368) | China Merchants Bank, Hong Kong | Manufacturer B |
| 28 | 10/11/2012 | $180,548.65 | Center Bank 3435 Wilshire Blvd, STE 700, Los Angeles, CA (Cest Toi Acct# 001390368) | Hong Kong & Shanghai Banking Corp., Hong Kong | Manufacturer A |
| 29 | 10/18/2012 | $199,320.20 | Center Bank 3435 Wilshire Blvd, STE 700, Los Angeles, CA (Cest Toi Acct# 001390368) | Hong Kong & Shanghai Banking Corp., Hong Kong | Manufacturer A |
| 30 | 11/27/2012 | $191,589.65 | BBCN Bank Olympic-Hoover Branch (Cest Toi Jeans Acct #001390368) | Hong Kong & Shanghai Banking Corp., Hong Kong | Manufacturer A |
| 31 | 11/29/2012 | $194,140.90 | BBCN Bank Olympic-Hoover Branch (Cest Toi Jeans Acct #001390368) | Hong Kong & Shanghai Banking Corp., Hong Kong | Manufacturer A |

| NO. | DATE | WIRE TRANSFER AMOUNT | OUTGOING BANK, LOCATION, ACCOUNT | RECIPIENT BANK, LOCATION | MANUFACTURER PAID |
|---|---|---|---|---|---|
| 32 | 11/29/2012 | $179,969.35 | BBCN Bank Olympic-Hoover Branch (Cest Toi Jeans Acct #001390368) | China Citic Bank, Hong Kong | Manufacturer C |
| 33 | 02/04/2013 | $481,066.30 | BBCN Bank Olympic-Hoover Branch (Cest Toi Jeans Acct #001390368) | China Citic Bank, Hong Kong | Manufacturer C |
| 34 | 05/08/2014 | $152,415.65 | BBCN Bank Olympic-Hoover Branch (Cest Toi Jeans Acct #001390368) | China Citic Bank, Hong Kong | Manufacturer C |
| 35 | 07/02/2014 | $462,236.45 | BBCN Bank Olympic-Hoover Branch (Cest Toi Jeans Acct #001390368) | Hong Kong & Shanghai Banking Corp., Hong Kong | Manufacturer A |

**Deception of CBP**

36.  On or about March 24, 2012, defendant C'EST TOI JEANS caused to be submitted an Entry Summary for Entry No. 99V00114881, a purchase by defendant C'EST TOI JEANS of various garments from Manufacturer C, which stated that the importer of record was defendant C'EST TOI JEANS and that the value of the import was $110,740.00, which was false because it was based, in part, on the

14

valuation of garment style W7031 at $4.00 per unit when such value was, in fact, at least $5.50 per unit.

37.  On or about January 17, 2018, defendant C'EST TOI JEANS caused to be submitted an Entry Summary for Entry No. BVU01925273, a purchase by defendant C'EST TOI JEANS of various garments from Manufacturer C, stating that the importer of record was Always 25 Global Corporation and that the value of the import was $96,179, which was false because it was based, in part, on the valuation of garment style of W7031 at $1.50 per unit when such value was, in fact, at least $5.50 per unit.

38.  On or about September 10, 2018, defendant C'EST TOI JEANS caused to be submitted an Entry Summary for shipment BVU01975369, a purchase by defendant C'EST TOI JEANS of various garments from Manufacturer C, stating that the importer of record was Elk Fashion Co. and that the value of the import was $54,183, which was false because it was based, in part, on the valuation of garment style of W7031 at $1.50 per unit when such value was, in fact, at least $5.50 per unit.

39.  On or about December 13, 2018, defendant C'EST TOI JEANS caused to be submitted an Entry Summary for shipment BVU02002718, a purchase of various garments from Manufacturer C made by defendant C'EST TOI JEANS, stating that the importer of record was In-Way Trading and that the value of the import was $31,354, which was false because it was based, in part, on the valuation of garment style of W7031 at $1.50 per unit when such value was, in fact, at least $5.50 per unit.

40.   On or about March 5, 2020, defendant C'EST TOI JEANS ordered various garments from Manufacturer C, which were to be shipped in Entry No. 8U815000520.

41.   On or about March 5, 2020, defendant C'EST TOI JEANS generated purchase orders for the shipment corresponding to Entry No. 8U815000520, in which the value of W7031 was stated as $4.00.

42.   On or about March 23, 2020, defendant C'EST TOI JEANS caused to be submitted to CBP an Entry Summary for Entry No. 8U815000520, which stated that the importer of record was Manufacturer C and that the value of the import was $41,436.80, which was false because it was based, in part, on the valuation of garment style of W7031 at $1.60 per unit when such value was, in fact, at least $5.50 per unit.

43.   On or about April 13, 2020, defendant C'EST TOI JEANS ordered various garments from Manufacturer D, which were to be shipped in Entry No. BVQ02082526, and agreed to pay $22,737.90 to Manufacturer D for the garments.

44.   On or about May 4, 2020, defendant C'EST TOI JEANS caused an Entry Summary for Entry No. BVQ02082526 to be submitted to CBP, which stated that the importer of record was Manufacturer D and that the value of import was $5,468.40, which was false because the value of the shipment was approximately $22,237.80.

45.   On or about May 15, 2020, in response to questions from CBP made to the customs broker responsible for filing the Entry Summary for Entry No. BVQ02082526, defendant C'EST TOI JEANS caused modified purchase orders totaling $5,468.40 to be submitted to CBP in order to

match the under-valued documents submitted in support of the initial Entry Summary submitted on or about May 4, 2020.

46.   On or about July 29, 2020, defendant C'EST TOI JEANS caused an Entry Summary for Entry No. EGT00238847 to be submitted to CBP, which stated that the importer of record was Valentina Evergreen Group LLC and that the value of the import was $5,011.00, which was false because the value of the shipment was $22,930.00.

COUNTS TWO THROUGH FOUR

[18 U.S.C. §§ 541, 2(a), 2(b)]

[ALL DEFENDANTS]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly effected, and willfully caused to be effected, the following entries of goods and merchandise, namely, clothing, upon a false classification as to their value and by payment of less than the amount of duty legally due:

| COUNT | ENTRY DATE | ENTRY NO. | FALSE VALUE DECLARED | AMOUNT UNDERVALUED | RESULTING DUTY NOT PAID |
|-------|-----------|-----------|---------------------|--------------------|-----------------------|
| TWO | 04/28/2014 | 99V00139300 | $98,352 | $54,063.65 | $8,137.46 |
| THREE | 06/06/2014 | 99V00140381 | $122,332 | $122,711.95 | $20,370.18 |
| FOUR | 06/12/2014 | 99V00140472 | $115,311 | $101,881.50 | $15,671.67 |

COUNTS FIVE THROUGH SEVEN

[18 U.S.C. §§ 542, 2(a), 2(b)]

[ALL DEFENDANTS]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW, and others known and unknown to the Grand Jury, each aiding and abetting the others, entered and introduced and willfully caused to be entered and introduced imported merchandise, namely, garments from China and elsewhere outside the United States, into the commerce of the United States by means of materially false and fraudulent invoices, declarations, affidavits, letters, papers, and by means of false statements, written or verbal, and by means of false or fraudulent practices or appliances, and any statements as to a material matter without reasonable cause to believe the truth of such statements.  Specifically, defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW stated, and willfully caused to be stated, that the false and fraudulent invoices represented the total value of the merchandise imported into the United States, whereas, in fact, as defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW then knew and believed, the false invoices undervalued the merchandise imported into the United States in amounts as follows:

| COUNT | ENTRY DATE | ENTRY NO. | FALSE VALUE DECLARED | AMOUNT UNDERVALUED | RESULTING DUTY NOT PAID |
|-------|-----------|-----------|---------------------|--------------------|------------------------|
| FIVE | 04/28/2014 | 99V00139300 | $98,352 | $54,063.65 | $8,137.46 |
| SIX | 06/06/2014 | 99V00140381 | $122,332 | $122,711.95 | $20,370.18 |
| SEVEN | 06/12/2014 | 99V00140472 | $115,311 | $101,881.50 | $15,671.67 |

COUNTS EIGHT THROUGH TEN

[18 U.S.C. §§ 545, 2(a), 2(b)]

[ALL DEFENDANTS]

On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly, willfully, and with intent to defraud the United States, made out and passed, and caused to be made out and passed, through a customhouse of the United States, the false and fraudulent documents set forth below in order to influence the actions of the United States regarding the calculation and collection of duties for the import of goods:

| COUNT | ENTRY DATE | FALSE AND FRAUDULENT DOCUMENT |
|-------|-----------|-------------------------------|
| EIGHT | 04/28/2014 | Form 7501, bearing entry number 99V00139300, falsely declaring that total entered value of the merchandise was $98,352 instead of the true invoiced amount of $152,415.65. |
| NINE | 06/06/2014 | Form 7501, bearing entry number 99V00140381, falsely declaring that total entered value of the merchandise was $122,332 instead of the true invoiced amount of $245,043.95. |
| TEN | 06/12/2014 | Form 7501, bearing entry number 99V00140472, falsely declaring that total entered value of the merchandise was $115,311 instead of the true invoiced amount of $217,192.50. |

COUNTS ELEVEN AND TWELVE

[18 U.S.C. §§ 1956(a)(2)(A), 2(a)]

[ALL DEFENDANTS]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW, each aiding and abetting the others, knowingly transferred monetary instruments and funds, namely, the amounts set forth below, from an account at a financial institution in the Central District of California, to an account at a financial institution outside of the United States, with the intent to promote the carrying on of specified unlawful activity, namely, Title 18, United States Code, Sections 541, 542, and 545, through the following transactions:

| COUNT | DATE | WIRE TRANSFER AMOUNT | OUTGOING BANK, LOCATION, ACCOUNT | RECIPIENT BANK, LOCATION |
|---|---|---|---|---|
| ELEVEN | 05/08/2014 | $152,415.65 | BBCN Bank Olympic-Hoover Branch (Cest Toi Jeans Acct #001390368) | China Citic Bank, Hong Kong |
| TWELVE | 07/02/2014 | $462,236.45 | BBCN Bank Olympic-Hoover Branch (Cest Toi Jeans Acct #001390368) | Hong Kong & Shanghai Banking Corp., Hong Kong |

21

COUNT THIRTEEN

[18 U.S.C. § 371]

[ALL DEFENDANTS]

The Grand Jury re-alleges the Introductory Allegations of this First Superseding Indictment here.

A. OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, but no later than December 1, 2010, and continuing until on or about October 1, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW conspired with others known and unknown to the Grand Jury to:

1.    Knowingly and intentionally conduct, and attempt to conduct, financial transactions affecting interstate and foreign commerce, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of a specified unlawful activity, that is, the unlawful distribution of controlled substances in violation of Title 21, United States Code, Section 841(a)(1) and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

2.    Knowingly cause defendant C'EST TOI JEANS to fail to file currency transaction reports for a trade or business as required by Title 31, United States Code, Section 5331(a), and the regulations promulgated thereunder, in violation of Title 31, United States Code,

Section 5324(b)(1), and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, in violation of Title 31, United States Code, Section 5324(d)(2); and

3.    Defraud the United States and agencies thereof, by impeding, impairing, obstructing, and defeating the lawful governmental functions of a government agency, namely, the IRS, by deceitful and dishonest means, in the ascertainment, computation, assessment, and collection of revenue, namely, income taxes.

B.    <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED</u>

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.    Defendants SI OH RHEW and LANCE RHEW would use defendant C'EST TOI JEANS to receive large amounts of bulk United States currency, including from narcotics proceeds, as payment for outstanding merchandise orders from customers in Mexico and elsewhere.

2.    Employees of defendant C'EST TOI JEANS would receive, count, and record the amounts of bulk currency received.

3.    Defendants SI OH RHEW and LANCE RHEW would maintain, and cause to be maintained by defendant C'EST TOI JEANS, "My Own CR Report" for the daily receipts of cash for defendant C'EST TOI JEANS and GLLR.

4.    Defendant C'EST TOI JEANS would fail to file, and defendants SI OH RHEW and LANCE RHEW would cause defendant C'EST TOI JEANS to fail to file, reports of currency transactions over $10,000

in a trade or business (IRS Form 8300), as required under Title 31, United States Code, Section 5331.

5. Through defendant C'EST TOI JEANS, defendants SI OH RHEW and LANCE RHEW would deposit, and cause to be deposited, United States currency less than the total amount received in bank accounts, creating bank statements that showed less cash received than recorded in "My Own CR Report."

6. Defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW would withhold providing copies of "My Own CR Report" to Tax Accountant A and instead provided bank statements, which showed less than the total amounts received and recorded in the "My Own CR Report," for the computation of gross sales for the U.S. Income Tax Returns for defendant C'EST TOI JEANS, JBLU, and GLLR.

7. Defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW would thereby cause Accountant A to issue Schedule K-1s to defendants SI OH RHEW and LANCE RHEW that were based on understated gross sales of defendant C'EST TOI JEANS, JBLU, and GLLR.

8. Defendants SI OH RHEW and LANCE RHEW would then cause the filing of personal U.S. Income Tax Returns that contained material misrepresentations about their respective incomes because they were based on the understated Schedule K-1s.

9. Defendants SI OH RHEW and LANCE RHEW would possess bulk United States currency.

10. After the 2014 Federal Search of C'est Toi Jeans, in an attempt to cover up the omission of cash from tax returns, defendant LANCE RHEW would instruct Accountant A to report income to the IRS

based on internal records that had been previously concealed from Accountant A.

11.  In total, defendants SI OH RHEW and LANCE RHEW would fraudulently omit more than $17.6 million in gross sales from tax returns filed with the IRS.

C.  OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects, on or about the following dates, defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

**Receipt of Currency and Failure to File Transaction Reports**

1.  On or about October 24, 2012, at the Towne Avenue Store, defendant C'EST TOI JEANS received approximately $39,980 in narcotics proceeds in the form of bulk United States Currency from an individual believed to a courier for a money consolidator but who was, in fact, an undercover agent from HSI (the "Undercover Agent"), as payment for merchandise on behalf of a customer.

2.  On or about November 8, 2012, defendant C'EST TOI JEANS failed to file, and defendants SI OH RHEW and LANCE RHEW caused defendant C'EST TOI JEANS to fail to file, a Form 8300 for the $39,980 received on October 24, 2012.

3.  On or about November 8, 2012, at the Wall Street Store, defendant C'EST TOI JEANS received approximately $35,000 in narcotics proceeds in the form of bulk United States Currency from the Undercover Agent, as payment for merchandise on behalf of a customer.

4.   On or about November 23, 2012, defendant C'EST TOI JEANS failed to file, and defendants SI OH RHEW and LANCE RHEW caused defendant C'EST TOI JEANS to fail to file, a Form 8300 for the $35,000 received on November 8, 2012.

5.   On or about November 15, 2012, at its Towne Avenue Store, defendant C'EST TOI JEANS received approximately $9,652 in narcotics proceeds in the form of bulk United States Currency from the Undercover Agent, as payment for merchandise on behalf of a customer.

6.   On or about January 31, 2013, at its Towne Avenue Store, defendant C'EST TOI JEANS received approximately $60,000 in narcotics proceeds in the form of bulk United States Currency from the Undercover Agent, as payment for merchandise on behalf of a customer.

7.   On or about February 15, 2013, defendant C'EST TOI JEANS failed to file, and defendants SI OH RHEW and LANCE RHEW caused defendant C'EST TOI JEANS to fail to file, a Form 8300 for the $60,000 received on January 31, 2013.

8.   On or about February 21, 2013, at its Towne Avenue Store, defendant C'EST TOI JEANS received approximately $43,970 in narcotics proceeds in the form of bulk United States Currency from the Undercover Agent, as payment for merchandise on behalf of a customer.

9.   On or about March 8, 2013, defendant C'EST TOI JEANS failed to file, and defendants SI OH RHEW and LANCE RHEW caused defendant C'EST TOI JEANS to fail to file, a Form 8300 for the $43,970 received on February 21, 2013.

10.   On or about March 15, 2013, at its Towne Avenue Store, defendant C'EST TOI JEANS received approximately $10,000 in narcotics

proceeds in the form of bulk United States Currency from the Undercover Agent, as payment for merchandise on behalf of a customer.

11.  On or about December 9, 2013, a coconspirator attempted to deliver approximately $70,000 in narcotics proceeds in the form of bulk United States Currency, as payment for merchandise to defendant C'EST TOI JEANS.

12.  On or about January 13, 2014, at its Towne Avenue Store, defendant C'EST TOI JEANS received approximately $50,000 in narcotics proceeds in the form of bulk United States Currency from a money consolidator ("Money Consolidator #1"), as payment for merchandise on behalf of a customer.

13.  On or about January 28, 2014, defendant C'EST TOI JEANS failed to file, and defendants SI OH RHEW and LANCE RHEW caused defendant C'EST TOI JEANS to fail to file, a Form 8300 for the $50,000 received on January 13, 2014.

14.  On or about February 10, 2014, at its Towne Avenue Store, defendant C'EST TOI JEANS received approximately $60,000 in narcotics proceeds in the form of bulk United States Currency from the Undercover Agent, as payment for merchandise on behalf of two customers, for $45,000 and $15,000, respectively.

15.  On or about February 25, 2014, defendant C'EST TOI JEANS failed to file, and defendants SI OH RHEW and LANCE RHEW caused defendant C'EST TOI JEANS to fail to file, a Form 8300 for the $45,000 or $15,000 received on February 10, 2014.

16.  On or about April 7, 2014, at its Wall Street Store, defendant C'EST TOI JEANS received approximately $50,000 in narcotics

proceeds in the form of bulk United States Currency from Money Consolidator #1, as payment for merchandise on behalf of a customer.

17.  On or about April 22, 2014, defendant C'EST TOI JEANS failed to file, and defendants SI OH RHEW and LANCE RHEW caused defendant C'EST TOI JEANS to fail to file, a Form 8300 for the $50,000 received on April 7, 2014.

18.  On or about May 12, 2014, at its Towne Avenue Store, defendant C'EST TOI JEANS received approximately $80,000 in narcotics proceeds in the form of bulk United States Currency from a courier for a money consolidator, as payment for merchandise on behalf of a customer.

19.  On or about May 27, 2014, defendant C'EST TOI JEANS failed to file, and defendants SI OH RHEW and LANCE RHEW caused defendant C'EST TOI JEANS to fail to file, a Form 8300 for the $80,000 received on May 12, 2014.

20.  On August 21, 2014, at its Wall Street Store, defendant C'EST TOI JEANS received approximately $18,857 in narcotics proceeds in the form of bulk United States Currency from Money Consolidator #1, as payment for merchandise on behalf of a customer.

21.  On or about August 26, 2014, at its Towne Avenue Store, defendant C'EST TOI JEANS received approximately $85,000 in narcotics proceeds in the form of bulk United States Currency from an unknown individual, as payment for merchandise on behalf of a customer.

22.  On or about September 8, 2014, defendant C'EST TOI JEANS failed to file, and defendants SI OH RHEW and LANCE RHEW caused defendant C'EST TOI JEANS to fail to file, a Form 8300 for the $18,857 received on August 26, 2014.

23.  On or about September 10, 2014, defendant C'EST TOI JEANS failed to file, and defendants SI OH RHEW and LANCE RHEW caused defendant C'EST TOI JEANS to fail to file, a Form 8300 for the $85,000 received on August 26, 2014.

24.  On July 30, 2015, at its Wall Street Store, defendant C'EST TOI JEANS received approximately $70,000 in narcotics proceeds in the form of bulk United States Currency from Money Consolidator #1, as payment for merchandise on behalf of a customer.

25.  On or about August 14, 2015, defendant C'EST TOI JEANS failed to file, and defendants SI OH RHEW and LANCE RHEW caused defendant C'EST TOI JEANS to fail to file, a Form 8300 for the $70,000 received on July 30, 2015.

26.  On October 1, 2015, at its Towne Avenue Store, defendant C'EST TOI JEANS received approximately $50,000 in narcotics proceeds in the form of bulk United States Currency from Money Consolidator #1, as payment for merchandise on behalf of a customer.

27.  On or about October 16, 2015, defendant C'EST TOI JEANS failed to file, and defendants SI OH RHEW and LANCE RHEW caused defendant C'EST TOI JEANS to fail to file, a Form 8300 for the $50,000 received on October 1, 2015.

## Failure to Report Cash on Taxes and Possession of Cash

### Tax Year 2011

28.  On April 2, 2012, defendant SI OH RHEW aided, assisted in, procured, counseled, and advised the preparation and filing of his personal tax return for calendar year 2011, which was false and material as to material matters, in that it understated the income received from JBLU and defendant C'EST TOI JEANS.

29.  On April 17, 2012, defendant SI OH RHEW paid $26,221 to the United States Treasury for taxes due for calendar year 2011, which was based on understated income.

30.  On May 4, 2012, defendant SI OH RHEW caused to be filed with the IRS Form 1120S for JBLU that reported gross sales of $21,678,223, which was based on bank statements for accounts belonging to JBLU and not the bulk cash recorded in "My Own CR Reports."

31.  On May 11, 2012, defendants C'EST TOI JEANS and SI OH RHEW caused to be filed with the IRS Form 1120S for defendant C'EST TOI JEANS that reported gross sales of $28,477,582, which was based on bank statements for accounts belonging to defendant C'EST TOI JEANS and not the bulk cash recorded in "My Own CR Reports."

<u>Tax Year 2012</u>

32.  On September 13, 2013, defendants C'EST TOI JEANS and SI OH RHEW caused to be filed with the IRS Form 1120S for defendant C'EST TOI JEANS that reported gross sales of $48,832,555, which was based on bank statements for accounts belonging to defendant C'EST TOI JEANS and not the cash recorded in "My Own CR Reports."

33.  On September 13, 2013, defendant SI OH RHEW caused to be filed with the IRS Form 1120S that reported gross sales of $50,187, which was based on bank statements belonging to JBLU and not the cash recorded in "My Own CR Reports."

34.  On October 14, 2013, defendant SI OH RHEW aided, assisted in, procured, counseled, and advised the preparation and filing of his personal tax return for calendar year 2012 that was false and

material as to material matters, in that it understated the income received from JBLU and defendant C'EST TOI JEANS.

Tax Year 2013

35.   On March 14, 2014, defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW caused to be filed with the IRS Form 1120S for defendant C'EST TOI JEANS that reported gross sales of $0 and a net loss of $4,653,906.00.

36.   On March 24, 2014, defendant LANCE RHEW caused to be filed with the Internal Revenue Service Form 1120S for GLLR that reported gross sales of $19,741,176.00, which was based on bank statements for accounts belonging to GLLR and not the bulk cash recorded in "My Own CR Reports."

37.   On April 15, 2014, defendant LANCE RHEW aided, assisted in, procured, counseled, and advised the preparation and filing of his personal tax return for calendar year 2013 which was false and material as to material matters, in that it understated the income received from GLLR.

**2014 Federal Search of C'est Toi Jeans and Attempted Cover-Up**

38.   On September 10, 2014, defendant LANCE RHEW possessed an electronic spreadsheet entitled "Monthly Sales 2013-2014" that recorded gross sales for defendant C'EST TOI JEANS as $56,397,712.56 for 2012 and $46,565,044.90 for 2013 and GLLR as $15,581,974.72 for 2012 and $20,834,816.37 for 2013.

39.   On September 10, 2014, defendant SI OH RHEW possessed approximately $38,360,549.00 in United States currency a residence he owned, occupied by defendant LANCE RHEW, some of which was in a lunch bag branded "C'est Toi Jeans" and included bulk cash proceeds.

31

40.   On September 12, 2014, defendant SI OH RHEW caused to be filed with the IRS Form 1120S for JBLU that reported gross sales of $376,844, which was based on bank statements belonging to JBLU and not the bulk cash proceeds recorded in "My Own CR Reports."

41.   On September 15, 2014, defendant LANCE RHEW instructed Accountant A to report gross sales to the IRS in the amount of $46,565,044.90 for defendant C'EST TOI JEANS, with no supporting documentation.

42.   On September 15, 2014, defendants C'EST TOI JEANS, SI OH RHEW, and LANCE RHEW caused to be filed with the Internal Revenue Service Form 1120S for defendant C'EST TOI JEANS that reported gross sales of $46,565,044.90.

43.   On September 15, 2014, defendant LANCE RHEW instructed Accountant A to report gross sales to the IRS in the amount of $20,834,816.37 for GLLR, with no supporting documentation.

COUNTS FOURTEEN THROUGH TWENTY

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2]

[DEFENDANT C'EST TOI JEANS]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant C'EST TOI JEANS, together with others known and unknown to the Grand Jury, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, conducted, attempted to conduct, aided and abetted the conducting of, and willfully caused others to conduct, the following financial transactions affecting interstate and foreign commerce, which transactions, in fact, involved the proceeds of a specified unlawful activity, namely, the unlawful distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), knowing that each of the transactions was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.

| COUNT | DATE | TRANSACTION |
|-------|------|-------------|
| FOURTEEN | 01/13/2014 | Defendant C'EST TOI JEANS' receipt of $50,000 in cash narcotics proceeds as payment for merchandise order on behalf of "Marta Martinez" |
| FIFTEEN | 02/10/2014 | Defendant C'EST TOI JEANS' receipt of $15,000 in cash narcotics proceeds as payment for merchandise order on behalf of "Continental" |
| SIXTEEN | 02/10/2014 | Defendant C'EST TOI JEANS' receipt of $45,000 in cash narcotics proceeds as payment for merchandise order on behalf of "JD" |
| SEVENTEEN | 04/07/2014 | Defendant C'EST TOI JEANS' receipt of $50,000 in cash narcotics proceeds as |

33

| COUNT | DATE | TRANSACTION |
|---|---|---|
| | | payment for merchandise order on behalf of "Marta Martinez" |
| EIGHTEEN | 08/21/2014 | Defendant C'EST TOI JEANS' receipt of $18,857 in cash narcotics proceeds as payment for merchandise order on behalf of "Salvador Jimenez" |
| NINETEEN | 07/30/2015 | Defendant C'EST TOI JEANS' receipt of $70,000 in cash narcotics proceeds as payment for merchandise order on behalf of "Pescado" |
| TWENTY | 10/01/2015 | Defendant C'EST TOI JEANS' receipt of $50,000 in cash narcotics proceeds as payment for merchandise order on behalf of "Pescado" |

COUNTS TWENTY-ONE THROUGH TWENTY-SIX

[31 U.S.C. §§ 5331(a), 5322(b)]

[DEFENDANT C'EST TOI JEANS]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant C'EST TOI JEANS knowingly and willfully failed to file a report of domestic currency transaction over $10,000 in a trade or business, and did so while violating another law of the United States, namely, Title 18, United States Code, Section 1956, and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, upon receipt of the following currency amounts:

| COUNT | DATE | AMOUNT RECEIVED | CUSTOMER |
|-------|------|-----------------|----------|
| TWENTY-ONE | 01/13/2014 | $50,000 | Marta Martinez |
| TWENTY-TWO | 02/10/2014 | $45,000 | JD |
| TWENTY-THREE | 02/10/2014 | $15,000 | Continental |
| TWENTY-FOUR | 04/07/2014 | $50,000 | Marta Martinez |
| TWENTY-FIVE | 07/30/2015 | $70,000 | Pescado |
| TWENTY-SIX | 10/01/2015 | $50,000 | Pescado |

COUNTS TWENTY-SEVEN THROUGH THIRTY-TWO

[31 U.S.C. §§ 5331(a), 5324(b)(1), 5324(d)(2)]

[DEFENDANTS SI OH RHEW and LANCE RHEW]

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants SI OH RHEW and LANCE RHEW knowingly caused C'est Toi Jeans to fail to file a report of domestic currency transaction over $10,000 in a trade or business, and did so while violating another law of the United States, namely, Title 18, United States Code, Section 1956, and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, upon receipt of the following currency amounts:

| COUNT | DATE | AMOUNT RECEIVED | CUSTOMER |
|---|---|---|---|
| TWENTY-SEVEN | 01/13/2014 | $50,000 | Marta Martinez |
| TWENTY-EIGHT | 02/10/2014 | $45,000 | JD |
| TWENTY-NINE | 02/10/2014 | $15,000 | Continental |
| THIRTY | 04/07/2014 | $50,000 | Marta Martinez |
| THIRTY-ONE | 07/30/2015 | $70,000 | Pescado |
| THIRTY-TWO | 10/01/2015 | $50,000 | Pescado |

COUNT THIRTY-THREE

[26 U.S.C. § 7206(2)]

[DEFENDANT SI OH RHEW]

On or about April 2, 2012, in Los Angeles County, within the Central District of California, defendant SI OH RHEW, a resident of Los Angeles County, California, knowingly and willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation under, and in connection with a matter arising under, the internal revenue laws, to the Internal Revenue Service, of a United States Individual Income Tax Return, Form 1040, of defendant SI OH RHEW and his spouse for the calendar year 2011 which was false and fraudulent as to material matters, in that Schedule E, Part II, Line 28 of such Form 1040 reported that the total nonpassive income from JBLU, Inc. and C'est Toi Jeans, Inc. for defendant SI OH RHEW and his spouse was $289,154, when, in fact, as defendant SI OH RHEW then knew and believed, the total nonpassive income from JBLU, Inc. and C'est Toi Jeans, Inc. for defendant SI OH RHEW and his spouse for calendar year 2011 was substantially greater than the reported amount because defendant SI OH RHEW failed to report approximately in excess of $12.5 million of gross receipts from these businesses.

COUNT THIRTY-FOUR

[26 U.S.C. § 7206(2)]

[DEFENDANT SI OH RHEW]

On or about October 14, 2013, in Los Angeles County, within the Central District of California, defendant SI OH RHEW, a resident of Los Angeles County, California, knowingly and willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation under, and in connection with a matter arising under, the internal revenue laws, to the Internal Revenue Service, of a United States Individual Income Tax Return, Form 1040, of defendant SI OH RHEW and his spouse for the calendar year 2012 which was false and fraudulent as to material matters, in that Schedule E, Part II, Line 28 of such Form 1040 reported that the total nonpassive income from JBLU, Inc. and C'est Toi Jeans, Inc. for defendant SI OH RHEW and his spouse was $345,638, when, in fact, as defendant SI OH RHEW then knew and believed, the total nonpassive income from JBLU, Inc. and C'est Toi Jeans, Inc. for defendant SI OH RHEW and his spouse for calendar year 2012 was substantially greater than the reported amount because defendant SI OH RHEW failed to report approximately in excess of $4.5 million of gross receipts from these businesses.

COUNT THIRTY-FIVE

[26 U.S.C. § 7206(2)]

[DEFENDANT LANCE RHEW]

On or about April 15, 2014, in Los Angeles County, within the Central District of California, defendant LANCE RHEW, a resident of Los Angeles County, California, knowingly and willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation under, and in connection with a matter arising under, the internal revenue laws, to the Internal Revenue Service, of a United States Individual Income Tax Return, Form 1040, of defendant LANCE RHEW for the calendar year 2013 which was false and fraudulent as to material matters, in that Schedule E, Line 28 of such Form 1040 reported that the total nonpassive income from GLLR, Inc. for defendant LANCE RHEW was $246,473, when, in fact, as defendant LANCE RHEW then knew and believed, the total nonpassive income from GLLR, Inc. for defendant LANCE RHEW for calendar year 2013 was substantially greater than the reported amount because defendant LANCE RHEW failed to report approximately $870,000 of gross receipts from this business.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction of the offenses set forth in any of Counts Eleven through Twelve and Fourteen through Twenty of this First Superseding Indictment.

2.    Each defendant so convicted shall forfeit to the United States of America the following:

(a)   Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), each defendant so convicted shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be

ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 981(a)(1)(A) and(C), and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(A) and (C), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of any of the offenses set forth in Counts One through Four, and Thirteen, of this First Superseding Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a) Any property, real or personal, involved in a transaction or attempted transaction in violation of section Title 18, United States Code, Section 1956, or any property traceable to such property;

(b)  All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any of the offenses of conviction; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), each defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a)

42

cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982(a)(2)(B)]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982(a)(2)(B) in the event of any defendant's conviction of the offense set forth in Counts One and Five through Ten of this First Superseding Indictment.

2.    Each defendant so convicted shall forfeit to the United States the following:

(a)  All right, title, and interest in any and all property, real or personal constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of each such offense;

(b)  Any merchandise imported, entered, introduced, or attempted to be entered or introduced, into the commerce of the United States in connection with such violation; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), each defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be

44

located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION FOUR

[18 U.S.C. §§ 982(a)(2)(B) and 545]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 545 in the event of any defendant's conviction of the offenses set forth in any of Counts Eight through Ten of this First Superseding Indictment.

2.    Each defendant so convicted shall forfeit to the United States the following:

       (a) Any and all merchandise imported, entered, introduced, or attempted to be entered or introduced, into the commerce United States in violation of Title 18, United States Code, Section 545, or the value thereof; and

       (b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), each defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished

in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION FIVE

[31 U.S.C. § 5317]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 31, United States Code, Section 5317, in the event of any defendant's conviction of the offenses set forth in Counts Thirteen and Twenty-One through Thirty-Two of this First Superseding Indictment.

2.   Each defendant so convicted shall forfeit to the United States of America the following:

(a)   All property, real or personal, involved in the offense and any property traceable thereto; and

(b)   To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p) and Title 31, United States Code, Section 5317(c)(1)(B), each defendant so convicted shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding, or any portion thereof; (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the

///

///

court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

CAROL A. CHEN
Assistant United States Attorney
Chief, International Narcotics,
Money Laundering, & Racketeering
Section

PUNEET V. KAKKAR
Assistant United States Attorney
Deputy Chief, International
Narcotics, Money Laundering,
& Racketeering Section

LUCY B. JENNINGS
Assistant United States Attorney
International Narcotics,
Money Laundering, & Racketeering
Section